**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DEBBIE WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>ROADSAFE TRAFFIC SYSTEMS, INC., and KOSS CONSTRUCTION, INC.,<br><br>Defendants. | Case No. 25-cv-1151-AWM-GEB |

## MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff Debbie Williams' Motion for Leave to File Third Amended Complaint ("Motion to Amend") **(ECF No. 49)**. On September 29, 2026, the Court conducted a hearing on the Motion to Amend. After carefully reviewing all the briefing and hearing arguments from counsel, the Court **DENIED** the Motion to Amend, finding Plaintiff failed to establish good cause for filing the Motion to Amend after the deadline set forth in the Scheduling Order. This Order memorializes the Court's reasoning following the text order entered on September 29, 2026 **(*see* ECF No. 75)**.

## I. Background

### A. Procedural History

On July 14, 2025, Plaintiff filed a Complaint against Defendant Bettis Asphalt & Construction, Inc. (ECF No. 1). On October 2, 2025, Plaintiff filed a First Amended Complaint to add Defendant RoadSafe Traffic Systems, Inc. ("RoadSafe") (ECF No. 15). On December 3, 2025, the Court entered a Scheduling Order (ECF No. 26), setting forth

the following relevant deadlines: 1) December 12, 2025 for the exchange of documents described in the parties' Fed. R. Civ. P. 26(a)(1) initial disclosures; 2) January 23, 2026 for any motions for leave to join additional parties or to otherwise amend the pleadings; 3) July 17, 2026 for the completion of mediation; and 4) September 18, 2026 for the close of discovery.

On March 2, 2026, Plaintiff filed an Unopposed Motion for Leave to File Second Amended Complaint to substitute Koss Construction, Inc. ("Koss") as Defendant for Bettis Asphalt & Construction, Inc. upon learning Koss Construction, Inc. is the proper name for Bettis Asphalt & Construction, Inc. (ECF No. 39). The Court granted the Unopposed Motion and Plaintiff filed the Second Amended Complaint on March 10, 2026 (ECF No. 42). On May 28, 2026, the parties attended a mediation but could not resolve the case (ECF No. 47).

On June 10, 2026, Plaintiff filed the instant Motion for Leave to File Third Amended Complaint ("Motion to Amend") (ECF No. 49) to add a claim for punitive damages against Defendants RoadSafe and Koss. Because the Motion to Amend was filed past the January 23, 2026 deadline for filing motions to amend and Plaintiff did not state good cause for why the Scheduling Order should be amended to allow the untimely Motion to Amend, the Court asked the parties to confer on: 1) whether there is good cause to amend the Scheduling Order and 2) on the issue of objections to the proposed amendment itself. The Court set a deadline of June 16, 2026 for this conferral, but subsequently extended that deadline to June 30, 2026 at the request of the parties (ECF Nos. 50-51).

After conferral, the parties could not agree on good cause or allowance of the proposed amendment. On June 30, 2026, Plaintiff filed a Memorandum in support of the Motion to Amend, which purports to set forth a good cause explanation for modifying the Scheduling Order motion to amend deadline (ECF No. 57). On July 7, 2026, each Defendant timely filed a response in opposition to the Motion to Amend and Memorandum (ECF Nos. 60 and 61). Plaintiff did not file a reply by the July 14, 2026 deadline. On August 13, 2026, the Court set a hearing date of September 11, 2026 at 10:00 a.m. to hear arguments on the Motion to Amend (ECF No. 64). Late afternoon on September 10, 2026, the day before the hearing, Plaintiff, without first seeking Court permission, filed a Supplemental Memorandum in Support of the Motion to Amend, setting forth a new good cause reason for modifying the Scheduling Order's motion to amend deadline (ECF No. 67).

In order to analyze the Supplemental Memorandum and attached Exhibits and allow Defendants a chance to respond, the Court reset the September 11th hearing date for September 29, 2026 (ECF No. 68). Defendants each filed a timely response to the Supplemental Memorandum (ECF Nos. 69 and 70). The Court conducted a hearing on September 29th wherein it denied the Motion to Amend, finding Plaintiff had not established good cause to modify the Scheduling Order. This written Memorandum and Order follows the Court's September 29th verbal denial of the Motion to Amend and text Order entered the same date (*see* ECF No. 75).

**B. Factual Summary**[1]

This case arises out of an auto accident that occurred on October 5, 2023 at a road construction site on Highway 54 in Seward County, Kansas. Defendant Koss was the general contractor and Defendant RoadSafe was the subcontractor for traffic control. Defendant RoadSafe provided traffic cones for traffic control purposes. Defendant RoadSafe also provided Defendant Koss with barricades, including Type III barricades, for Defendant Koss to use and place as their work required in accordance with the project's approved traffic control plan.

Plaintiff was operating a semitruck on Highway 54 in the left lane because the right lane was closed by the row of traffic cones Defendant RoadSafe had previously placed. Plaintiff encountered mis-positioned cones, and believing they were directing traffic to merge right, Plaintiff began transitioning into the right-hand lane. When Plaintiff moved over, she struck a large, unmarked 8 feet x 12 feet trench in the concrete which had been cut out as part of the construction project. Plaintiff's dashcam video shows no Type III barricades were placed near the trench at the time Plaintiff moved over into the right-hand lane.

As a result of driving into the trench, Plaintiff asserts she was severely injured and seeks damages for those injuries. She is suing both Defendants for negligence for, among other things, allegedly failing to: 1) properly mark or barricade the trench cut into the right-

[1] This factual summary is taken from Plaintiff's Second Amended Complaint (ECF No. 42); Plaintiff's Motion to Amend (ECF No. 49); Defendant RoadSafe's Response to the Motion to Amend (ECF No. 60); and Defendant Koss's Response to the Motion to Amend (ECF No. 61).

hand lane, which constituted a hazardous condition not visible or reasonably apparent to approaching traffic; 2) provide adequate signage or warning alerting drivers of the trench; and 3) follow industry-standard traffic control and safety protocols for active construction zones, including the proper placement of cones and barriers to guide and protect drivers. Additionally, Plaintiff claims Defendant Koss was vicariously liable for the negligence of Defendant RoadSafe.

## II. Legal Standard

### A. Fed. R. Civ. P. 16 – Good Cause

When considering a motion to amend filed past the scheduling order deadline, Fed. R. Civ. P. 16(b)(4) is implicated.[2] Rule 16(b)(4) provides a "schedule may be modified only for good cause and with the judge's consent." Additionally, judges in this District "have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)."[3] In such cases, the court will "first determine whether the moving party has established 'good cause' within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[4] Only after finding good cause will the court proceed to the second step and evaluate whether the broader, more lenient Rule 15(a) standard for amendment has been satisfied.[5]

[2] *Johnson v. Unified Gov't of Wyandotte Cnty. & Kansas City*, No. 24-2329-TC-GEB, 2025 WL 1745009, at *2 (D. Kan. June 24, 2025).

[3] *Carefusion 213, LLC v. Pro. Disposables, Inc.,* No. 09–2616–KHV, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010) (citations omitted).

[4] *Id.*

[5] *Id.*; *Kansas Heart Hosp., LLC v. Smith*, No. 21-CV-1115-KHV-TJJ, 2022 WL 1471367, at *2 (D. Kan. May 10, 2022).

The Tenth Circuit has described Rule 16(b)(4)'s good-cause standard as requiring the movant to show existing scheduling order deadlines "cannot be met despite the movant's diligent efforts."[6] The good-cause standard requires the moving party to provide an adequate explanation for the delay.[7] Good cause may be shown "if a plaintiff learns new information through discovery or if the underlying law has changed."[8] The lack of prejudice to the nonmovant does not show good cause.[9] "A district court's determination as to whether a party has established good cause sufficient to modify a scheduling order amendment deadline is within the court's discretion."[10]

**B. Fed. R. Civ. P. 15 – Factors for Amendment**

After a showing of good cause, the standard for permitting a party to amend his or her pleadings is well established under Rule 15(a). Rule 15(a)(2) provides that unless an amendment is allowed as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." The rule further instructs courts "should freely give leave when justice so requires." "Indeed, Rule 15(a)'s purpose is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."[11]

---

[6] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (citations omitted).

[7] *Id.* at 988.

[8] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

[9] *Kansas Heart Hosp., LLC*, 2022 WL 1471367, at *2.

[10] *Singer v. Lagas*, No. 21-CV-2111-JWB-TJJ, 2022 WL 990747, at *2 (D. Kan. Apr. 1, 2022).

[11] *Warnick v. Cooley*, 895 F.3d 746, 754–55 (10th Cir. 2018) (internal quotations and citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (describing Rule 15's directive to "freely give leave" as a "mandate . . . to be heeded").

Courts may deny a motion to amend on the grounds of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment."[12] "Practically speaking, the party opposing a motion to amend bears the burden to demonstrate why the amendment should not be permitted."[13] The decision to grant leave is within the sound discretion of the court.[14] When exercising its discretion, a court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[15]

## III. Discussion

### A. Fed. R. Civ. P. 16 – Good Cause Analysis

#### 1. Plaintiff's June 30, 2026 "Good Cause" Memorandum (ECF No. 57)

As stated above, the Scheduling Order set forth a January 23, 2026 deadline for filing motions to amend the pleadings. Plaintiff filed the subject Motion to Amend on June 10, 2026, but failed to set forth any good cause statement for justifying the late-filed Motion. The Court gave the parties an opportunity to confer regarding the timing and content of the Motion to Amend. On June 30, 2026, when that conferral failed, Plaintiff

[12] *Hasan v. AIG Prop. Cas. Co.,* 935 F.3d 1092, 1101-02 (10th Cir. 2019) (quoting *Foman*, 371 U.S. at 182).

[13] *Wheeler v. Bd. of Directors of Sterling Free Pub. Libr.*, No. 23-2401-EFM-ADM, 2024 WL 1720726, at *3 (D. Kan. Apr. 22, 2024) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010)).

[14] *Johnson*, 2025 WL 1745009, at *3.

[15] *Id.* (citations omitted).

filed a Memorandum in Support of her Motion to Amend (ECF No. 57) purporting to set forth good cause for modification of the Scheduling Order's January 23, 2026 motion to amend deadline. Each Defendant filed a timely response in opposition. Plaintiff did not file a reply.

**a. Parties' Arguments**

Plaintiff's Motion to Amend (ECF No. 49), proposed Third Amended Complaint (ECF No. 49-1) and Memorandum in Support of the Motion to Amend (ECF No. 57), taken together, reveal Plaintiff is seeking to file a Third Amended Complaint to add a claim for punitive damages under K.S.A. § 60-3702(c) for wanton conduct for Defendants' alleged failure to mark the trench with a Type III barricade, as allegedly required by State of Kansas Department of Transportation Plan and Profile of Proposed Federal Aid Project Seward County (Kansas Project No. 54-88 KA-2385-01), hereafter referred to as the "KDOT Plan."

In her Memorandum, Plaintiff states she has good cause for failure to meet the January 23rd motion to amend deadline for several reasons. First, Plaintiff says Defendant Koss did not disclose the KDOT Plan until February 24, 2026, when it was belatedly produced as part of Koss's Rule 26(a)(1) initial disclosure document production. Second, Plaintiff states her expert, Richard Cannon, determined Defendants failed to properly mark the trench as required by the KDOT Plan on April 27, 2026 when issuing his expert report. Third, Plaintiff states the parties mediated in good faith on May 28, 2026, but failed to settle the case. And fourth, at the time Plaintiff filed her Motion to Amend, no other discovery had taken place, meaning Defendants would not suffer any prejudice by the proposed amendment. In summary, Plaintiff argues that "despite due diligence, [she] did

not have access to the KDOT Plan, nor the ability to secure an expert opinion based on the KDOT Plan, which is the factual basis for Plaintiff's punitive damage claim, until after the January 23, 2026, motion to amend deadline."[16]

In response, both Defendants argue contrary to Plaintiff's assertion, Defendant RoadSafe produced the KDOT Plan, which included Standard TE744 requiring Type III barricades in hazardous workspaces that Plaintiff's expert relied on in his report, on December 11, 2025, as part of its initial disclosure document production. Therefore, Defendants maintain Plaintiff had the KDOT Plan well before the January 23rd motion to amend deadline. Both Defendants further contend Standard TE744, which Plaintiff relies on, is neither a secret nor is it a job specific plan. Rather, it is a KDOT Standard easily available on KDOT's website, and has been a long-standing Standard.

Additionally, RoadSafe states Plaintiff's current Complaint is predicated on Defendant's alleged negligent failure "to properly mark or barricade the trench . . . [and] to provide adequate signage or warning alerting drivers of the trench."[17] RoadSafe argues Plaintiff does not explain how this alleged negligence "suddenly blossomed into Defendant's 'realization of the imminence of danger to others and with reckless disregard' punitive damage standard of K.S.A. § 60-3702(c) simply because Plaintiff later realized there was a standard KDOT plan requiring 'signage.'"[18] RoadSafe further insists Standard TE744 "may be relevant as to standard of care regarding signage (which Plaintiff was

---

[16] ECF No. 57 at 2.
[17] ECF No. 60 at 2.
[18] *Id.* at 4.

already litigating), but Plaintiff has not explained how it tips the scale into punitive damages."[19]

**b. Analysis**

As stated previously, the motion to amend deadline, as set by the Scheduling Order, was January 23, 2026. Plaintiff filed this Motion to Amend almost five months later, on June 10, 2026. For the following reasons, the Court finds Plaintiff has not established good cause to amend the Scheduling Order to allow the untimely Motion to Amend.

***First***, Plaintiff had the KDOT Plan in hand before the January 23rd amendment deadline through Defendant RoadSafe's December 11, 2025 initial disclosure document production. Plaintiff did not file a reply disputing this, and Plaintiff's counsel admitted during the September 29th hearing he did have the KDOT Plan via RoadSafe's disclosures. This means Plaintiff had the information forming the basis of her proposed amendment, *i.e.* that Defendants should have allegedly put a Type III barricade in front of the trench, more than one month before the motion to amend deadline, and six months before actually filing the Motion to Amend.[20]

***Second***, Plaintiff argues she did not know of the requirement for the use of the Type III barricade until her expert opined so in his April 27, 2026 report; however, this is still about one and half months before Plaintiff actually sought leave to amend. And, a plaintiff

[19] *Id.*

[20] *See, e.g., Padilla v. Horizon Mgmt., L.L.C.,* No. 22-2430-JAR-RES, 2023 WL 6216312, at *4 (D. Kan. Sept. 25, 2023) (denying an untimely-filed motion to amend where Plaintiff had received Defendant's initial disclosures, which contained information forming the basis of the proposed amendment, two months before the motion to amend deadline).

does not meet Rule 16(b)(4)'s good cause standard for an untimely motion to amend if a plaintiff had "'evidence that should have led [the plaintiff] to the information that the proposed claim is based on.'"[21]

***Third***, Plaintiff seems to argue she was waiting for mediation to occur before moving to amend. But mediation alone is not good cause for failure to meet scheduling order deadlines, unless previously unknown information became available solely through mediation.[22] That does not appear to be the case here and Plaintiff has not argued as much.

***And finally***, Plaintiff also posits because no discovery had been done at the time she filed the Motion to Amend, Defendants would not be prejudiced by the proposed amendment. But lack of prejudice to the nonmovant does not establish good cause to amend the scheduling order.[23]

**2. Plaintiff's September 10, 2026 Supplemental "Good Cause" Memorandum (ECF No. 67)**

On the afternoon before the scheduled September 11th hearing, Plaintiff, without first seeking court permission, filed a Supplemental Memorandum in support of the Motion to Amend (ECF No. 67), which sets forth an entirely new reason for good cause to modify the motion to amend deadline. However, in order to ensure the Court's decision is based on the merits rather than technicalities, as the Federal Rules require, the Court rescheduled

---

[21] *See id.* at *4 (citing *Hans v. Bd. of Cnty. Commissioners of Shawnee Cnty., Kansas*, No. 16-4117-DDC, 2017 WL 3781837, at *2 (D. Kan. Aug. 31, 2017) (quoting *Five Rivers Ranch Cattle Feeding LLC v. KLA Env't Servs., Inc.,* No. 08-2185-EFM, 2010 WL 2609426, at *2 (D. Kan. June 25, 2010))).

[22] *See Padilla*, 2023 WL 6216312, at *4

[23] *Id.* at *5.

the hearing for September 29th to allow Defendants an opportunity to respond and the Court a chance to hear all arguments. Each Defendant filed a timely response in opposition to the Supplemental Memorandum. The parties' arguments are summarized below, followed by the Court's analysis.

**a. Parties' Arguments**

In the Supplemental Memorandum, Plaintiff states she has good cause for her late-filed Motion to Amend because on August 28 and September 2, 2026, Plaintiff's counsel received approximately 4,000 documents from a subpoena served to KDOT on August 19, 2026. Plaintiff asserts five of these documents support her proposed claim for punitive damages and also states neither Defendant RoadSafe nor Koss included these documents in their initial disclosure document production.

The ***first document*** is a December 13, 2022 KDOT Diary Report, which appears to be notes from a daily meeting. In attendance were two employees from Kaw Valley Engineering; an employee from Meyer Seeding; two KDOT employees; and two Koss employees. In pertinent part, it says:

> Koss plans to change traffic to the new lanes next week. Travis [a Koss employee] was informed that KDOT is requesting a meeting with RoadSafe to go over changes to the project staging. KDOT would like to make sure RoadSafe brings the necessary traffic control signs to make the change.
>
> Dan Bergeron [Kaw Valley Engineering] also informed Koss that with the amount of traffic control being installed on site, KDOT will not tolerate signing being out of compliance for extended periods of time. RoadSafe will need to repair deficiencies in a timely manner and check in with project staff when they are on site. Moving forward traffic control will need to be repaired or the contractor will be required to stop work until repairs are complete.[24]

[24] ECF No. 67-1.

The ***second document*** is another KDOT Diary Report, summarizing a February 14, 2023 meeting. In attendance were an employee from Kaw Valley Engineering; an employee from Sporer; and four KDOT employees. No employees from Koss or RoadSafe are listed. In pertinent part, it says:

> Note: High wind conditions damaged the temporary construction signs throughout the project today. At 1:00PM Bryan Fox with Koss was informed that multiple signs, cones, and barricades were blown down. Koss had two people working on repairs from 2:00PM until 6:00PM.[25]

The ***third document*** is a June 19, 2023 email from a Kaw Valley Engineering employee to Koss employees stating:

> Storms came through Liberal on Saturday June 17, 2023, producing 60 MPH+ wind.
>
> Type III barricades are down at the west end of the project sideroads and entering the project, County Road 7 at the 54 HWY junction, County Road 7 at County Road M, and County Road M7 at the RV Park. Several of the barricades are damaged beyond repair. There are also portable channelizers down throughout the project.
>
> Please let me know when these traffic control issues can be repaired.

About an hour and half later, a Koss employee replied:

> Road safe will be out on K122 this Wednesday. I will make sure they address these issues on K648 as well when they are here.[26]

The ***fourth document*** is a June 28, 2023 email from a Kaw Valley Engineering employee to Koss employees stating:

---

[25] ECF No. 67-2.
[26] ECF No. 67-3.

> Due to the thunderstorms that passed through last night, the project has considerable number of signs and barricades down. The stop sign at 54Hwy and County Road O needs to be reset today.
>
> Truck traffic has also damaged the edge wedge in several locations throughout the project. These areas have created a drop off that would be detrimental to the traveling public. Please advise to when the areas will be repaired.

About 30 minutes later, a Koss employee replied:

> I will get the traffic control issues take care of today! For the damaged wedge, we will repair when the median is dried out from the storms that went through last night.[27]

The ***fifth document*** is a September 5, 2023 email from a Kaw Valley Engineering employee to two KDOT employees stating:

> Over the weekend Mike Pittman drove down to Liberal. He noticed a few issues with traffic control. There are conflicting signs on the project. I believe he is talking about the merge sign just outside of the main plant entrance. He would also like more channelizers put up where there are "holes" dug. Stations 710+00 to about 655+00, on the RCB located at 508+75 right, and on the RCB located at 428+00 left. Would it be possible to get RoadSafe out to take care of these items?[28]

In response to Plaintiff's statement the above documents were not included in its initial disclosure document production, RoadSafe responds it did not have these documents and, in fact, had no possible access to these documents. RoadSafe argues they are internal documents and emails of KDOT and RoadSafe was not present for any of the KDOT meetings and were not included on any of the emails.

---

[27] ECF No. 67-4.
[28] ECF No. 67-5.

RoadSafe also argues these KDOT documents do not show anything but routine issues in a major construction project, and do not reflect any neglect or other failure on the part of RoadSafe that would support a claim for ordinary negligence, let alone punitive damages. RoadSafe further contends the fact Plaintiff was not provided these documents by KDOT until August 28th in response to a subpoena she served on August 19th does not excuse Plaintiff's failure to request amendment of her complaint to add a claim for punitive damages before the Scheduling Order deadline.

In its response, Defendant Koss states based on the information presently available, the emails reflect routine communications between KDOT and a construction contractor on a project involving thousands of traffic-channelizing cones, which traffic and ordinary construction operations can damage or displace. Koss also argues allowing the amendment after discovery closes would substantially prejudice Koss because of the need to depose the relevant KDOT representatives to establish the context and intended meaning of the emails on which Plaintiff relies.

During the September 29th hearing, Defendant Koss also stated Plaintiff is taking the KDOT documents out of context as they just show the routine damage that happens to signage in a construction project when cars go through at 60 mph and weather occurs. Defendant Koss further argued to the extent these documents were in its possession, they were not produced as initial disclosure documents because Koss was not planning on using them in support of its defense.

**b. Analysis**

In essence, Plaintiff argues the above documents show Defendants received multiple warnings about issues with signage at the construction project and failed to comply with the warnings, thus supporting a claim for punitive damages. Plaintiff asserts she should be allowed to amend the pleadings out-of-time because neither Defendant disclosed the documents with their initial disclosure production. If they had done so, Plaintiff maintains she could have filed the Motion to Amend on a timely basis. The Court finds these arguments unpersuasive for three reasons.

***First***, the Court finds neither Defendant had an obligation to produce the documents in its initial disclosure production. Rule 26(a)(1) governs initial disclosures and states, in relevant part, "a party must, without awaiting a discovery request, provide to the other parties: . . . (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."[29]

RoadSafe states it could not have produced these documents because it never had possession, custody or control of them. The Court finds this credible as the documents themselves show no RoadSafe employees/representatives were present at the KDOT meetings or included on the emails. In fact, the first two documents, which are the KDOT

---

[29] Fed. R. Civ. P. 26(a)(1)(A)(ii).

Diary Reports, appear to be internal KDOT documents, so the Court is unsure why either Defendant would have had possession of those documents.

Furthermore, Koss states it did not produce the emails at issue because there was no intent to use them to support its defense. As stated above, Rule 26 (a)(1)(A)(ii) only requires disclosure of "documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Parties "are not obligated to disclose material they do not intend to use."[30] "Unless something 'in the record leads the Court to believe' that a party has improperly withheld materials or has otherwise failed to satisfy disclosure obligations required under Rule 26(a)(1), the Court defers to the disclosing party's determination of what materials to disclose."[31] The disclosing party is in the best "position to determine what documents or materials it has in its possession, custody or control that it 'may use to support its claims or defenses.'"[32] In this case, at the September 29th hearing, Koss's counsel stated the emails were not something he perceived as being used to support Koss's defenses, and so Koss would not have produced them as initial disclosures for that reason. With this affirmation, the Court does not find Koss had a duty to disclose the emails under Rule 26(a)(1)(A)(ii).[33]

---

[30] *Certain Underwriters at Lloyd's London v. Garmin Int'l, Inc.*, No. 11-CV-2426-EFM, 2012 WL 5305358, at *3 (D. Kan. Oct. 25, 2012).

[31] *Id.* (citation omitted).

[32] *Id.*

[33] *Norouzian v. Univ. of Kansas Hosp. Auth.*, No. CIV.A. 09-2391-KHV, 2010 WL 4513406, at *3 (D. Kan. Nov. 2, 2010), aff'd, 438 F. App'x 677 (10th Cir. 2011) ("Only the disclosing party is in a position to determine what documents or materials it has in its possession, custody or control that it 'may use to support its claims or defenses,' and, thus, it is up to Defendants in this case to determine what documents and materials to disclose. Nothing in the record leads the Court to believe that Defendants have improperly withheld documents or other materials from Plaintiff or otherwise not satisfied their Rule 26(a)(1) disclosure obligations.").

***Second***, the Court does not find good cause under Rule 16(b)(4) where Plaintiff relies on documents from a subpoena she sent to KDOT on August 19, 2026, which was just one month before discovery closed. Especially where discovery has been open since at least December 3, 2025, which was when the Scheduling Order was entered. A party's "burden to establish its diligence is not satisfied merely by stating when it learned of the purportedly new information . . . [r]ather, the moving party must act with reasonable diligence in unearthing—through the customary tools of discovery—the ostensibly newly discovered evidence . . . that allegedly justified the motion to amend."[34] "In other words, in considering whether 'good cause' excuses compliance with a scheduling order deadline, the district court must examine whether the movant had been diligent, though unsuccessful, in attempting to acquire the information that would have formed the basis of a timely motion to amend . . . [b]ecause of this, a lack of diligence can include a [movant's] failure to seek the information it needs to determine whether an amendment is in order."[35]

The Court does not find Plaintiff acted with diligence by waiting until one month before the close of discovery to send the subpoena.[36] At the September 29th hearing,

---

[34] *Driverdo, LLC v. Slalom, Inc.*, No. 24-2249-EFM-RES, 2025 WL 3039254, at *4 (D. Kan. Oct. 31, 2025) (internal quotations and citations omitted); *see also Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1021 (10th Cir. 2018) (citing with approval the district court's statement that "even if this motion is predicated on information that was not in hand . . . until a month ago, these are matters that could have and . . . should have been discovered far before that and long before that").

[35] *Driverdo, LLC,* 2025 WL 3039254, at *4 (internal quotations and citations omitted).

[36] *See, e.g., id.* at *5 (in denying the defendant's motion for leave to amend for lack of good cause under Rule 16(b)(4), the court found defendant failed "to provide sufficient information for the Court to conclude that Defendant could not have discovered the relevant facts sooner despite diligent efforts."); *Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *3 (D. Kan. Aug. 31, 2020) (in denying the defendant's motion for leave to amend for

Plaintiff's counsel stated he sent the subpoena to KDOT because he felt he was not getting all documents from Defendants, but he did not explain why he waited until right before the end of discovery to seek the documents. Nor did Plaintiff approach the Court at any time during the discovery period regarding issues in seeking responsive documents from Defendants. If there were ongoing issues with Defendants' production of documents, Plaintiff was obligated to timely bring those issues to the Court for resolution, but Defendant never requested a discovery conference per D. Kan. Rule 37.1.[37]

***Third***, the Court finds Plaintiff has not established how these documents support a proposed claim for punitive damages based on Defendant's alleged failure to place a Type III barricade by the unmarked trench.[38] Plaintiff argues the documents show multiple warnings were given to Defendants about signage issues which were not complied with. However, there is no indication Defendants were not complying with the notices. In fact, the second KDOT Diary Report states Koss was informed at 1:00 p.m. that multiple signs, cones, and barricades were blown down due to high winds. It then states Koss had two people working on repairs from 2:00 p.m. until 6:00 p.m. Additionally, the third and fourth emails show the Koss employee quickly responding that sign damage would be repaired.

---

lack of good cause under Rule 16(b)(4), the court stated defendant did "not explain why this fairly basic information was not or could not be obtained earlier through other discovery methods").

[37] *See Driverdo, LLC,* 2025 WL 3039254, at *6 ("But even if Defendant had timely requested relevant discovery, Defendant failed to timely raise any discovery disputes with the Court regarding the purported delays in obtaining responsive information. . . . Again, if there were ongoing issues with Plaintiff's production of responsive documents and information, Defendant was obligated to timely bring those issues to the Court for resolution, but Defendant never requested a discovery conference.").

[38] *See id.* at *7-10 (in denying the defendant's motion for leave to amend for lack of good cause under Rule 16(b)(4), the court discussed how Defendant had not established that the entirety of the proposed amendments are based on the purported new information).

Accordingly, for all of the above stated reasons, the Court finds Plaintiff has not shown good cause under Rule 16(b)(4) to extend the Scheduling Order's January 23, 2026 motion to amend deadline. The Court therefore denies the Motion to Amend as untimely.

**B. Fed. R. Civ. P. 15 – Factors for Amendment Analysis**

Because the Court does not find Plaintiff has established good cause pursuant to Rule 16(b)(4) for its untimely request to amend, the Court need not reach whether leave should be granted pursuant to Rule 15(a). But if the Court were to look at Rule 15(a), it would likely find Plaintiff's proposed amendment futile.

In considering whether a proposed amendment is futile, a court uses the same analysis that governs a Rule 12(b)(6) motion to dismiss for failure to state a claim. Accordingly, a court will deny an amendment on the basis of futility when, accepting the well-pleaded allegations of the proposed amended complaint as true and construing them in the light most favorable to the plaintiff, the court determines the plaintiff has not presented a claim to relief that is plausible on its face.[39]

Here, Plaintiff's Motion to Amend seeks to add a punitive damages claim, but the proposed Third Amended Complaint (ECF No. 49-1) alleges no facts setting forth any wanton conduct within the meaning of K.S.A. § 60-3702(c), which states where punitive damages are claimed a plaintiff has the "burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." When a plaintiff seeks to amend a

---

[39] *See, e.g.*, *Riley v. PK Mgmt., LLC*, No. 18-CV-2337-KHV-TJJ, 2019 WL 2994547, at *2 (D. Kan. July 9, 2019).

complaint to add a claim for punitive damages, a plaintiff "is not required to meet the 'clear and convincing' standard for punitive damages, nor submit concrete evidence to support her claim, at this phase of the case. Rather, she must simply state enough facts to make her punitive damages claim plausible on its face."[40]

Plaintiff's proposed Third Amended Complaint, however, alleges no facts showing wantonness (i.e., realization of the imminence of danger and a reckless disregard and complete indifference to the probable consequences[41]). For example, there are no facts alleging Defendants knew the work zone was in an alleged dangerous condition before the accident and refused to fix the cones or put a Type III barricade in front of the trench. In fact, Plaintiff adds no new facts at all, but merely conclusory states the "conduct of Defendants constituted wanton conduct within the meaning of K.S.A. § 60-3702(c). Defendants acted with a realization of the imminence of danger to others and with reckless disregard or complete indifference to the probable consequences of his actions."[42] Simply stated, there is no specification in the proposed Third Amended Complaint of what conduct Plaintiff is alleging to be wanton.[43]

As Defendant RoadSafe aptly states, while Plaintiff's current Complaint asserts negligence based on Defendant's alleged failure "to properly mark or barricade the trench

---

[40] *Id.*
[41] *See Soto v. City of Bonner Springs*, 238 P.3d 278, 284 (Kan. 2010).
[42] ECF No. 49-1 at 6.
[43] *Contra Riley*, 2019 WL 2994547, at *3 (allowing a proposed amendment for punitive damages where plaintiff sufficiently alleged wantonness by pleading facts showing Defendant knew of the dangers because they received more than a dozen inspection reports of infestations and refused multiple suggestions to perform a full-building inspection).

. . . [and] to provide adequate signage or warning alerting drivers of the trench," Plaintiff's proposed Third Amended Complaint does not explain how this alleged negligence "suddenly blossomed" into wanton conduct.[44]

Accordingly, **IT IS THEREFORE ORDERED** Plaintiff's Motion for Leave to File Third Amended Complaint **(ECF No. 49)** is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 21, 2026, at Wichita, Kansas.

/s/ Gwynne E. Birzer
Gwynne E. Birzer
United States Magistrate Judge

[44] *See* ECF No. 60 at 4.